UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SUSAN DIXON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-831-XR |
| | § | |
| COMAL COUNTY, TEXAS AND COMAL | § | |
| COUNTY DISTRICT ATTORNEY'S | § | |
| OFFICE, | § | |
| | | |
| *Defendants*. | | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this day the Court considered Defendants' Motion for Summary Judgment (Docket

Entry No. 25).  Having considered the motion, Plaintiff's response, and Defendants' reply, and the

record in this case, the Court hereby GRANTS Defendants' motion.

**Background**

Susan Dixon is a woman of African and British descent.  She was born in the United

Kingdom, moved to the United States in 1992, and became a United States citizen in 2000.  Dixon

worked as a receptionist at the Comal County District Attorney's Office from July 10, 2006 until

her employment was terminated on April 21, 2008.  She was hired for this position by Sam Katz,

who was serving as office manager at that time, after initially applying for a Clerk V position

several months prior.[1]  Her primary duties included greeting office visitors, answering phone calls,

directing phone calls to appropriate staff members, and routing mail and faxes to appropriate staff

---

[1]Dixon Dep. 55:9-16.

members.[2]

Throughout the term of her employment, Dixon felt constantly mistreated and harassed by her coworkers and her supervisors, primarily due to her accent and pronunciation.[3]  She was also passed over for promotion several times.  In January 2007, she applied for a Clerk IV position, but her colleague Analisa McKinnis, a Hispanic woman, was hired instead.[4]  In March 2007, Dixon applied for a Clerk V position as a legal assistant to a felony prosecutor in the District Attorney's Office.[5]  She was interviewed for the job, but the it was offered instead to Analisa Steenbergen, a Caucasian woman.[6]

Geoffrey Barr became the Comal County District Attorney on May 1, 2007.[7]  The following month, Barr removed Katz as office manager and appointed Sandra Haag, who then became Dixon's supervisor.[8]  Dixon complained to Haag on several occasions that she was being harassed by her colleagues, but Haag apparently did not take any action or report the harassment

---

[2]Comal County Job Description for Clerk I (Receptionist) (attached as Ex. 3 to Def.'s Mot. for Summ. J., Dec. 6, 2010 (Docket Entry No. 25)).

[3]Affidavit of Susan Dixon ¶¶ 9,11,16,20-24, Jan. 10, 2011 (attached as Ex. 2 to Pl.'s Resp.); *see e.g.,* Dixon Dep. 115-116, 155:5-156:23.

[4]Dixon Aff. ¶ 12.

[5]Application for Employment of Susan Hertz-Dixon, Mar. 25, 2007 (attached as Ex. 7 to Def.'s Mot. and as Ex. 2-D to Pl.'s Resp. to Def.'s Mot. for Summ. J., Jan. 11, 2011 (Docket Entry No. 36)).

[6]Affidavit of Jo Ann Hackney ¶ 5 (ex. 5 to Def.'s Mot.); Dixon Dep. 159:12-16.

[7]Affidavit of Geoffrey Barr ¶ 2, Dec. 3, 2010 (attached as Ex. 1 to Def.'s Mot.); Deposition of Geoffrey Barr 6:2-4, Nov. 9, 2010 (attached as Ex. 3 to Pl.'s Resp.).

[8]Deposition of Sandra Haag 9:25-10:6, Nov. 9, 2010 (attached as Ex. 4 to Pl.'s Resp.).

any further.[9]

On October 31, 2007, Dixon was involved in an incident with fellow employee Sonny Montoya.[10]  While Montoya was on the phone with Victim's Assistance Coordinator Sarah Zamora, Dixon and Montoya engaged in a verbal altercation which escalated to both women physically poking each other.[11]  Haag, Hackney, Dixon, and Montoya discussed the incident, and Haag ultimately told Dixon and Montoya to put the issue to rest and try to get over it.[12] Unsatisfied with Haag's decision to take no further action on the matter, Dixon later raised the issue directly with Barr.[13]  Haag had previously counseled her that she should not go directly to Barr to discuss the issue.[14]

On November 16, 2007, Dixon received a Performance Correction Notice from Haag.[15] The Notice addressed Haag's concerns regarding Dixon's performance of her duties in the areas of "chain of command," "office/phone ettiquette," "mail/motions/faxes," and "employee conduct & work rules," specifically including the October 31, 2007 incident with Sonny Montoya.[16]  It also noted that if Dixon failed to improve in the identified areas, she could "face disciplinary

---

[9]Dixon Dep. 127:18-128:10; Haag Dep. 120:3-121:12.

[10]Dixon Dep. 207:7-209:14; Haag Aff. ¶ 10.

[11]*Id.*

[12]Haag Dep. 33:6-35:8; Dixon Dep. 209:23-25.

[13]Haag Dep. 63:19-67:6; Dixon Aff. ¶ 21.

[14]*Id*.

[15]Performance Correction Notice (Written Warning), Nov. 16, 2007 (attached as Ex. 4-F to Def.'s Mot.).

[16]*Id.*

action up to and including termination."[17]

Dixon submitted a response to the notice two days later.[18]  The response addressed the October 31, 2007 incident with Montoya and rebutted the critiques in each of the areas discussed in the Notice.[19]  It also stated that Montoya and others had "subtly harassed [Dixon] on and off since [her] employment with this office" and that Haag was "aware of this, and [had] acknowledged the fact that certain individuals treat [her] different to others."[20]

In February 2008, Dixon circulated an email to all secretaries in the District Attorney's Office, attaching an article reporting that the estranged husband of a Comal County Sheriff's Office employee had been arrested, and noting "be careful who you marry or date."[21]  She subsequently circulated a copy of the man's booking record and mug shot.[22]  The emails were forwarded to Barr, who directed Haag to speak with Dixon because the conduct was "inappropriate."[23]  Haag raised the issue with Dixon, who responded angrily and began yelling at

_____

[17]*Id.*

[18]Response to Performance Correction Notice (Written Warning), Nov. 18, 2007 (attached as Ex. 2-G to Pl.'s Resp.).

[19]*Id.*

[20]*Id.*

[21]Email from Susan Hertz-Dixon to CDA Secretary List re "Be careful who you marry or date", Feb. 14, 2008 (attached as Ex. 4-G to Def.'s Mot.).

[22]Email from Susan Hertz-Dixon to CDA Secretary List re "Teresa's ex husband / Michael Zamora's case", Feb. 14, 2008 (attached as Ex. 4-H to Def.'s Mot.).

[23]Email from Geoffrey Barr to Sandra Haag re "FW: Be careful who you marry or date", Feb. 14, 2008 (attached as Ex. 4-I to Def.'s Mot.).

4

Case 5:09-cv-00831-XR   Document 43   Filed 02/15/11   Page 5 of 19

Haag.[24]  After Dixon expressed concern that she would receive a written reprimand, Haag

informed her that she would not issue a formal reprimand but instructed her to avoid such

conduct.[25]

In March 2008, Elizabeth Rinehart, a Caucasian woman, was hired for a Clerk IV

position.[26]  The position was not advertised, and Dixon was not given an opportunity to apply.[27]

Dixon was disappointed that she was passed over for this position, and complained to several

people including defense counsel who happened to be in the District Attorney's Office at the

time.[28]

On April 10, 2008, Officer Manager Jo Ann Hackney called Dixon into her office for a

meeting.[29]  The meeting focused on Dixon's complaints about not receiving the Clerk IV position,

as well as Hackney's and Haag's concern that Dixon was inappropriately discussing internal

office matters with people outside the office.[30]  Hackney also questioned Dixon about a rumor that

Dixon was intending to file a lawsuit against Comal County.[31]  Dixon denied that she was

---

[24]Haag Aff. ¶ 13.

[25]*Id.*

[26]Affidavit of Geoffrey Barr ¶ 9, Dec. 3 , 2010 (attached as Ex. 1 to Def.'s Mot.);
Deposition of Geoffrey Barr 44:5-19, Nov. 9, 2010 (attached as Ex. 3 to Pl.'s Resp.); Dixon Aff.
¶ 25.

[27]*Id.*;

[28]Dixon Dep. 161:7-164:14; Haag Aff. ¶14; Hackney Aff. ¶ 7.

[29]Affidavit of Jo Ann Hackney ¶ 7, Dec. 6, 2010 (attached as Ex. 5 to Def.'s Mot.);
Deposition of Jo Ann Hackney 74:5-77:3, Nov. 9, 2010 (attached as Ex. 5 to Pl.'s Resp.).

[30]*Id.*

[31]Hackney Aff. ¶ 8; Hackney Dep. 73:7-76:11.

intending to file a lawsuit,[32] but stated that she did believe that she had grounds to do so due to the harassment she had endured in her job, and her belief that she had not been promoted because of her ethnicity, race, and vocal accent.[33]

Dixon's employment was terminated on April 21, 2008.[34]  The termination notice specifically cited the following grounds: (1) violations of the chain of command policy, as discussed with Hackney on April 8, 2008; (2) unacceptable conduct during counseling with Hackney on April 8, 2008; (3) an outburst on February 18, 2008 after Haag's discussion regarding the inappropriate email, and a subsequent outburst later that afternoon in front of the Criminal District Attorney.[35]

**Procedural Background**

Plaintiff filed an EEOC Charge of Discrimination against Comal County on June 5, 2008.[36]  The EEOC issued a letter of Determination on April 3, 2009, finding that Comal County had violated Title VII by failing to select Dixon for the Clerk V position and by terminating her employment after she complained of discrimination.[37]

Dixon filed a complaint in this Court on October 9, 2009, alleging discrimination on the

---

[32]Hackney Dep. 75:24-76:6.

[33]Dixon Aff. ¶ 26.

[34]Notice of Termination, Apr. 21, 2008 (attached as Ex. 4-K to Def.'s Mot. and Ex. H to Pl.'s Resp.).

[35]*Id.*

[36]Charge of Discrimination, Jun. 5, 2008 (attached as Ex. 2-I to Pl.'s Resp.).

[37]EEOC Letter of Determination 451-2008-01478, Apr. 30, 2009 (attached as Ex. 2-J to Pl.'s Resp.).

basis of race and national origin in violation of 42 U.S.C. § 2000e-2, and retaliation in violation of 42 U.S.C. § 2000e-3.  Defendants filed this motion for summary judgment on December 6, 2010.[38]  With permission of the Court to extend the response deadline, Plaintiff filed a response on January 11, 2011.[39]  Also with permission of the Court to extend the deadline, Defendants filed a reply on January 31, 2011.[40]

## Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d

---

[38]Def.'s Mot. for Summ. J., Dec. 6, 2010 (Docket Entry No. 25).

[39]Pl.'s Resp. to Def.'s Mot. for Summ. J., Jan. 11, 2011 (Docket Entry No. 36).

[40]Def.'s Reply to Pl.'s Resp., Jan. 31, 2011 (Docket Entry No. 38).

1527, 1537 (5th Cir. 1994).  To avoid summary judgment, the nonmoving party must adduce

admissible evidence that creates a fact issue concerning the existence of every essential

component of that party's case and unsubstantiated assertions of actual dispute will not suffice.

*Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992).  The opposing party cannot establish a

genuine issue of material fact by resting on the mere allegations of the pleadings.  *Hulsey v. State

of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).  The Court reviews all facts in the light most

favorable to the nonmoving party.  *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th

Cir. 2009).  A motion for summary judgment cannot be granted simply because there is no

opposition.  *Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006).

## Analysis

### 1. Discrimination Claim

Dixon alleges that she was not hired for the Clerk V position in March 2007 and the Clerk

IV position in March 2008 due to her race and national origin.[41]  A plaintiff may prove

employment discrimination through either direct or circumstantial evidence.  *Jones v. Overnite

Transp. Co.*, 212 Fed.Appx. 268, 272 (5th Cir. 2006) (citing *Laxton v. Gap Inc.*, 333 F.3d 572,

578 (5th Cir. 2003)).  Plaintiff argues that she has both provided direct evidence of discrimination,

and that discrimination can be inferred from circumstantial evidence surrounding Defendants'

conduct.

---

[41]In her Response, Dixon attempts to add a third instance of discrimination, that she was
not hired for a Clerk IV position in January 2007.  Pl.'s Resp. at 17.  Although the Court will
consider her evidence relating to that hiring process as part of the overall circumstances
surrounding her employment, she only plead claims arising from the March 2007 and March
2008 positions in her Complaint.  Pl.s' Compl. at 4.

**A.  Direct Evidence of Discrimination**

Direct evidence of discrimination can be provided by "any statement or written document showing a discriminatory motive on its face." *Jones*, 212 Fed.Appx. at 272 (quoting *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001)).  The evidence must be such that, if believed, would prove unlawful discrimination without any inferences or presumptions.  *Nichols v. Loral Vought Systems Corp.,* 81 F.3d 38, 40 (5th Cir. 1996) (citing *Bondenheimer*, 5 F.3d 955, 958 (5th Cir. 1993)).

Comments made in the workplace will only provide sufficient evidence of discrimination if they are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Patel v. Midland Memorial Hosp. and Medical Center*, 298 F.3d 333, 343-344 (5th Cir. 2002) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222-25 (5th Cir. 2001)).

Plaintiff has provided no direct evidence of discrimination.  Dixon's allegations that she was routinely harassed by her co-workers does not constitute direct evidence to the extent that they did not have authority over the employment decisions at issue, her not being promoted to the Clerk IV and Clerk V positions.  The fact that Haag was aware of Dixon's complaints about her colleagues' harassment but did not address them does not establish discrimination without requiring some inference or presumption.

There is also evidence to suggest that one reason that Dixon was not hired for the Clerk V position is that Ed Springer, a felony prosecutor, expressed that he had trouble hearing and

understanding her.[42]  The open position was for the legal assistant to Springer and another felony

prosecutor.[43]  Dixon alleges these comments were discriminatory as they were in reference to her

vocal accent.  This evidence also requires some further inference or presumption and is thus not

direct evidence of discrimination.  Similarly, Dixon's allegations that Barr yelled at her for her

inability to pronounce Hispanic names is not direct evidence of discrimination, as it requires

further inference.  Furthermore, she has provided no evidence that this incident with Barr was

related to her not being hired for the Clerk V and Clerk IV positions.  Accordingly, there is no

issue of fact to suggest any evidence of direct discrimination.

**B.  Circumstantial Evidence of Discrimination**

Under the framework established by *McDonnell Douglas Corp. v. Green*, the initial

burden to prove a prima facie case of discrimination by circumstantial evidence falls upon the

plaintiff.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973).  A plaintiff must demonstrate the following: (1) she is a member of a protected class; (2)

she possessed the required qualifications for employment in the position; (3) despite her

qualifications, she suffered an adverse employment action; and (4) the employer instead promoted

someone outside the protected class.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir.

2003).  Once the Plaintiff establishes a prima facie case, the burden shifts to the employer to

articulate a "legitimate, nondiscriminatory reason" for the adverse action.  *Id*.  The plaintiff then

has the burden to show that the employer's stated reason was merely a pretext for prohibited

---

[42]Hackney Aff. ¶ 5.

[43]*Id.*

10

discrimination. *McDonnell Douglas,* 411 U.S. at 804; *Okoye*, 245 F.3d at 512.

**Clerk IV Position in March 2008**

Dixon fails to establish a prima facie case of discrimination with regard to the Clerk IV position. Defendant's evidence establishes that the position was not advertised. Instead, an empty Clerk IV position that would not otherwise have been filled was changed into a Crime Analyst position for the purpose of hiring Rinehart.[44] Rinehart was uniquely qualified for the position and Barr believed a Crime Analyst would serve the needs of the department.[45] No one other than Rinehart was considered for the job.[46] The job classification was changed as soon as possible after Rinehart was hired to reflect that it was a Crime Analyst position.[47] Dixon has presented no evidence that she was qualified for a Crime Analyst position. In contrast, she testified that she was not qualified for such a position.[48] Accordingly, Dixon has failed to present a prima facie case of discrimination with regard to the Clerk IV position. *See McDonnell Douglas,* 411 U.S. at 802; *Manning*, 332 F.3d at 881.

In conclusion, Dixon has presented no direct evidence of race or national origin discrimination. She has failed to establish a prima facie case to show that the reason she was not hired for the Clerk IV position was discriminatory. Finally, she has failed to show a material issue of fact to suggest that the reasons she was not hired for the Clerk V position were pretext.

---

[44]Barr Aff. ¶ 9.

[45]*Id.*

[46]*Id.*

[47]*Id.*

[48]Dixon Dep. 175:5-176:3.

11

**Clerk V Position in March 2007**

Defendants argue that, even if Dixon could establish a prima facie case of discrimination with regard to the Clerk V position, they have provided undisputed evidence of their legitimate, nondiscriminatory reasons for hiring Steenbergen instead of Dixon, and that Dixon has failed to present any competent evidence that these reasons were a pretext for discrimination.

Defendant has presented evidence that Plaintiff was interviewed for the position by Katz, Hackney, and Ed Springer, a felony prosecutor.[49]  Each interviewer independently scored each candidate, and Steenbergen received higher scores by all three interviewers than did Dixon.[50] Steenbergen was also perceived to be more qualified and more professional, so was offered the job over Dixon, who had the next highest interview scores.[51]  Furthermore, Springer specifically expressed concerns about Dixon due to her difficulty maintaining confidentiality of criminal matters.[52]  He also mentioned that he had trouble hearing and understanding Dixon, because he was hard of hearing.[53]  The open position was for the legal assistant to Springer and another felony prosecutor.[54]

In order to establish that these reasons are pretext, Dixon must provide evidence to rebut each of the nondiscriminatory reasons given by Defendants.  *Wallace v. Methodist Hosp. System*,

---

[49]Hackney Aff. ¶ 5.

[50]*Id.*

[51]*Id.*

[52]*Id.*

[53]*Id.*

[54]*Id.*

271 F.3d 212, 220 (citing *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400-401 (5th Cir. 2000); *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999)).

With regard to the explanation that Steenbergen was considered more qualified for the position, Dixon presents evidence regarding her qualifications for the position as compared to those of Steenbergen. A plaintiff may demonstrate pretext by showing that she was "clearly better qualified" for the position at issue. *Manning*, 332 F.3d at 882 (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999).

Dixon argues that her experience as a paralegal, experience working in criminal probation at the Federal level, experience with the Texas Penal Code, qualification as a Notary Public, and longer history with the department, all made her more experienced than Steenbergen.[55] Dixon has not provided the Court with any description of the job or summary of its requirements to demonstrate that her qualifications were more suited to the position. Furthermore, the Court has reviewed the résumés and application files of both Dixon and Steenbergen, which reveal that the difference between their qualifications was not as drastic as characterized by Dixon's argument.[56] Steenbergen had nine years of experience working in various probation departments, including responsibility for the daily operations of a sentencing program for juvenile offenders.[57] Furthermore, Dixon's own evidence indicates that, although she was certified as a paralegal in

---

[55]Pl.'s Resp. at 6.

[56]*See* Job Application and Résumé of An L. Steenbergen, Mar. 30, 2007 (attached as Ex. 8 to Def.'s Mot.); Job Application and Résumé of Susan A. Hertz-Dixon, Mar. 26, 2007 (attached as Ex. 7 to Def.'s Mot.).

[57]Steenbergen Résumé.

13

April 2006, she did not have any actual experience working as a paralegal.[58]  Finally, Dixon has

not addressed the fact that she was considered by the interviewers to be less professional than

Steenbergen.  Overall, a comparison of the two résumés does not reveal such striking disparities

to conclude that there is a fact issue suggesting that Dixon was "clearly better qualified" than

Steenbergen for the position.

On the issue of Springer's statement that he had difficulty hearing and understanding her,

Dixon has presented evidence to dispute that he had a hearing problem, including the affidavit of

Karen Sulfridge, who worked for several prosecuting attorneys including Springer.  Sulfridge

stated that she worked closely with Springer for over a year, and during that time never saw him

wear a hearing aid nor noticed that he suffered from any hearing deficiency.[59]  Defendant moves

to strike the portions of Sulfridge's affidavit regarding Springer's hearing on the basis that they

are speculative or conclusory and that she does not have personal knowledge.[60]  Sulfridge's

statement, however, is clearly expressing her experience and impression of Springer's hearing

ability, and thus it is competent summary judgment evidence.[61]  Accordingly, there is an issue of

fact as to Springer's hearing ability.  This alone, however, is not sufficient to create a material fact

---

[58]Job Application and Résumé of Susan A. Hertz-Dixon and attached files (attached as Ex. 2-D to Pl.'s Resp.).

[59]Affidavit of Karen Sulfridge ¶ 7, Jan. 10, 2011 (attached as Ex. 6 to Pl.'s Resp.).

[60]Def.'s Reply at 2.

[61]Dixon's own affidavit also states that she never saw Springer using a hearing aid, and that she did not believe that he had a hearing deficiency.  Dixon Aff. ¶ 24.  Defendant moves to strike this evidence on the basis that it contradicts Dixon's deposition testimony that she was, in fact, aware that Springer had a hearing problem.  Dixon Dep. 90:5-20, 159:4-6.  Even excluding Dixon's contradictory affidavit, however, Sulfridge's statements create an issue of fact with regard to Springer's hearing ability.

issue as to pretext.  Dixon has not presented any evidence to suggest that Springer's motivations were discriminatory in nature, as opposed to a valid concern regarding his ability to communicate with his legal assistant.  Furthermore, Dixon has not provided evidence to rebut Springer's concern regarding her inability to keep criminal matters confidential.  Accordingly, there is no material issue of fact as to pretext with regard to Dixon not being hired for the Clerk V position.

Plaintiff has not provided sufficient evidence, direct or circumstantial, to create an issue of material fact with regard to her discrimination claim.  Summary judgment is GRANTED to Defendants on this claim.

**2.  Retaliation Claim**

If a plaintiff fails to make a prima facie showing of retaliation, then summary judgment for the defendant is warranted.  *Dallas v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004); *Ackel v. National Communications, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (citing *Banks v. East Baton Rouge Parish School Board,* 320 F.3d 570. 575 (5th Cir. 2003)).  A prima facie case of retaliation requires evidence that (1) the Plaintiff engaged in protected conduct, (2) the Plaintiff was thereafter subjected to an adverse employment action, and (3) the adverse employment action was made in response to the protected conduct.  *Hockman v. Westward Communications,* 407 F.3d 317, 330 (5th Cir. 2004) (citing *Chaney v. New Orleans Public Facility Management,* 179 F.3d 164, 167 (5th Cir. 1999)).  It is undisputed that Dixon was subjected to an adverse employment action when her employment was terminated.  Thus, in order to establish a prima facie case for retaliation, Dixon must prove that the termination was caused by her engaging in a protected activity.

An employee has engaged in a protected activity if she has (1) "opposed any practice made

an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding or hearing" under Title VII.  42 U.S.C.

§ 2000e-3(a); *Byers v. Dallas Morning News*, 209 F.3d 419, 427-28 (5th Cir. 2000).  Dixon did

not file an EEOC charge until after she was terminated, so the only potential protected activity in

this case would be an internal complaint or opposition.  For a plaintiff to prove that her conduct

falls within the "opposition clause," she need not prove that her employer's actions were

unlawful, but must prove that she had "a reasonable belief that the employer was engaged in

unlawful employment practices."  *Byers*, 209 F.3d at 428.  The informal complaint or opposition

must have been made in relation to conduct that is a violation of law.  *Hagan v. Echostar*

*Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008).

Dixon made several complaints to her supervisors that she was being harassed by her

colleagues.  The only indication that she expressed any belief to her supervisors that this

harassment was related to her race or national origin is in her response to the Performance

Correction Notice she received in November 2007.  In her response, she stated: "I am mocked

everyday because of my accent and called names" but noted "I do not take any offense."[62]

Mocking by co-workers is not illegal conduct under Title VII, and Dixon herself admits that she

did not take offense to the conduct.  Thus, such complaints do not fall within the "opposition

clause" of 42 U.S.C. § 2000e-3.  *See Hagan*, 529 F.3d at 626-28.

Thus, the sole evidence that Dixon engaged in protected activity is in her affidavit, which

states that, during the April 10, 2008 meeting with Hackney, she stated her belief that she could

file a lawsuit based on harassment by her colleagues, as well as her not being promoted due to her

---

[62]Performance Correction Notice at 2.

ethnicity, race, and accent.[63]  Hackney's affidavit asserts that Dixon did not mention any belief

that she had been discriminated against during this conversation, and did not specify any of the

reasons she felt justified her bringing a lawsuit.[64]  Thus there is a factual issue as to whether

Dixon expressed this complaint.  Failure to promote due to discriminatory motives is illegal

conduct under Title VII, and may constitute protected activity if her belief was reasonable.  *See*

*Byers*, 209 F.3d at 428.

Even if Dixon's statement in that meeting did amount to protected activity, she is still

unable to establish a prima facie case because she has not submitted sufficient evidence to suggest

a causal relationship between that conduct and her termination.  Dixon alleges that causation can

be inferred by the short period of time that passed between her meeting with Hackney on April 10,

2008 and her termination on April 21, 2008.[65]  Close timing between the employee's protected

activity and the alleged retaliatory action may be sufficient to provide the causal connection

required in a prima facie retaliation case.  *Swanson v. General Services Admin.*, 110 F.3d 1180,

1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)).  Once

the employer offers a legitimate, non-discriminatory reason for the timing, however, the plaintiff

must offer evidence to suggest that retaliation was the true motive.  *Swanson,* 110 F.3d at 1188.

Dixon's employment was terminated eleven days after her meeting with Hackney.[66]  The

close timing is insufficient to provide proof of a causal connection in this case, however, as

---

[63]Dixon Aff. ¶ 26.

[64]Hackney Aff. ¶ 8.

[65]Pl.'s Resp. at 21-22.

[66]Dixon Aff. ¶ 26.

17

Dixon's Notice of Termination provides Defendants' legitimate, non-discriminatory basis for the timing of the termination.  The Notice specifies two separate acts of subordination occurring on April 8, 2008, which amounted to violations of the Chain of Command policy and a "clear pattern of insubordination" in violation of the Comal County standards of performance and conduct.[67] These bases, only two days before the alleged protected activity, are legitimate and non-discriminatory, especially when combined with the ample evidence that Defendants have provided of Dixon's pattern of insubordinate and unprofessional behavior throughout the period of her employment.  Dixon has offered no evidence to suggest that retaliation was the true motive for her termination, as opposed to the pattern of her conduct for which she was counseled and reprimanded several times.  Accordingly, summary judgment is GRANTED to Defendants on the retaliation claim.

---

[67]Notice of Termination.

18

**Conclusion**

Defendant's Motion for Summary Judgment (Docket Entry No. 25) is GRANTED.  No claims remain pending in this case.  The Clerk is directed to enter a judgment that the plaintiff recover nothing, the action be dismissed on the merits, and that the defendants recover costs from the plaintiff Susan Dixon.

It is so ORDERED.

SIGNED this 15th day of February, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE